TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture/General Crimes Sections
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2569/1785
    Facsimile: (213) 894-0142/0141
    E-mail: Victor.Rodgers@usdoj.gov
           Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> $217,285.00 IN U.S. CURRENCY, TWO ROLEX WATCHES AND ONE BREITLING WATCH, <br><br> Defendants. | Case No.2:22-CV-00015 <br><br> COMPLAINT FOR FORFEITURE <br><br> 18 U.S.C. § 981(a)(1)(A) & (C) and 21 U.S.C. § 881(a)(6) <br><br> [FBI] |

    Plaintiff United States of America brings this claim against defendants $217,285.00 in U.S. Currency, Two Rolex Watches and One Breitling Watch, and alleges as follows:

JURISDICTION AND VENUE

    1.   The government brings this <u>in</u> <u>rem</u> forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) & (C) and 21 U.S.C. § 881(a)(6).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendants in this action are referred to collectively as "the defendants" and are more specifically described as:

(a) $217,285.00 in U.S. Currency seized by law enforcement officers on or about July 15, 2021 during the execution of federal search warrants and consisting of $190,285.00 seized from storage unit number 265 at Menifee Storage, 27437 Murrieta Road in Sun City, California and $27,000.00 seized at the Perris, California residence of Mitchell Magee, Shamica Magee and Armon Magee;

(b) Two Rolex Watches, consisting of one Rolex Datejust Watch with serial number CS405695 (appraised at approximately $11,000.00 in 2021) and one Rolex Datejust Watch with serial number 462312Y2 (appraised at approximately $14,000.00 in 2021), both of which were seized on or about July 15, 2021 during the execution of a federal search warrant at the Perris, California residence; and

(c) One Breitling Watch, consisting of a Breitling Super Ocean Watch with serial number 7093481 (appraised at approximately $4,700.00 in 2021) and seized on or about July 15, 2021 during the execution of a federal search warrant at the Perris, California residence.

6. The defendants are currently in the custody of the United States Marshals Service in this District, where they will remain

1  subject to this Court's jurisdiction during the pendency of this
2  action.
3      7.   The interests of Mitchell Magee, Shamica Magee and Armon
4  Magee may be adversely affected by these proceedings.

BASIS FOR FORFEITURE

Background Regarding U.S. Private Faults

8.   U.S. Private Vaults ("USPV") is a company that was in the business of renting safe deposit boxes to customers. By providing and promoting total anonymity, USPV catered to and attracted criminals who sought to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS, and law enforcement.

9.   The company's primary pitch to customers was anonymity, as reflected in its website that provided "Complete Privacy; Biometric Identification; No ID Required." USPV also boasted in its website "Our business is one of the very few where we don't even want to know your name. For your privacy and the security of your assets in our vault, **the less we know the better**." This advertisement appealed to persons engaged in activities which they wished to hide from legal authorities and law-abiding financial institutions.

10.  USPV also posted on its website "Four Reasons to Store Your Gold At USPV," information designed to market the company's services, which led to many involved in criminal activities to rent boxes from USPV. The posting asserted:

> Banks require clients to provide their social security number and a photo identification as a condition for renting a safe deposit box. Your information is then filed in the bank's central data system. This information can be

> easily accessed by government agencies (such as the IRS) or attorneys armed with court orders. If no one is aware you have a safe deposit box, the contents (your gold) are much safer.

By advocating a service which circumvented the IRS and persons "armed with court orders," customers engaged in illegal activity were attracted to and ultimately stored and secreted their criminal proceeds (which the government has a legitimate interest in) at USPV, instead of at banks or law-abiding financial institutions where their illegal activities would more likely be uncovered.

11. In the same post, "Four Reasons to Store Your Gold At USPV", USPV stated:

> As government chartered institutions, banks are now required to file "suspicious activity reports." . . . U.S. Private Vaults is not subject to federal banking laws and would only cooperate with the government under court order.

By marketing services in this fashion, some persons who ultimately became USPV customers, were attracted by the advertisements because USPV's safe deposit box storage facilities offered them a much safer place to store their illegal criminal proceeds, unlike law-abiding banks, so as to eliminate their fear of apprehension by law enforcement and in promotion of their illegal activities.

12. Further, and in order to shield customers from having law enforcement uncover their illegal activity, USPV encouraged its customers pay their box rental fees in cash. In addition, USPV charged customers significantly higher prices than those charged by major banks, because USPV offered something which legitimate banks do not: anonymity, a place to store illegally obtained cash, tips and

4

assistance in avoiding law enforcement and a willingness to look the other way with regard to all types of criminal conduct. And one of USPV's owners has gone so far as to brag about bringing to USPV individuals selling marijuana and other drugs illegally, based on the owner's connections, by marketing USPV as a safe place for those criminal actors and potential USPV customers to store their ill-gotten gains.

13. Not surprisingly, because USPV's business model is designed to appeal and cater to criminals, USPV has repeatedly been used by criminals to store criminal proceeds. Over the years, the contents of specific boxes at USPV have been forfeited because they are the proceeds of criminal activity. For example, on July 1, 2019, officers seized $215,653 from Michael Beaver, as he was leaving USPV, and then seized an additional $1,448,700 from his USPV boxes. Records from the Employment Development Department (the "EDD"), which is the California agency to whom employers must report wages earned by their employees, showed Beaver had no legitimate employment income. In addition, Beaver's phones revealed evidence of drug trafficking activity, and the in excess of $1.6 million funds were forfeited as proceeds of unlawful activity.

14. On April 21, 2019, a victim was kidnapped in San Diego and brutally tortured in a warehouse, where the victim was hit with sticks and baseball bats; stripped naked; hit with a hammer on the victim's toes; and set on fire. Allan Newman was arrested and charged with kidnapping for ransom, attempted murder, torture and aggregated mayhem relative to the beating. The victim had been employed by a group of people who were engaged in distributing counterfeit marijuana vaping cartridges, and the group believed the

victim had stolen a suitcase full of cash, which a vape cartridge customer had left at the warehouse. A portion of the funds had been placed by the victim's ex-wife in a safe deposit box at USPV, which the ex-wife retrieved and used to pay the victim's ransom.

15. On March 6, 2018, officers seized $101,080 and 26 gold bars from Vincent Ramos' USPV box. Ramos was the CEO of a company that facilitated the importation, exportation and distribution, internationally, of wholesale quantities of cocaine, heroin and methamphetamine. The currency and gold bars were forfeited, and Ramos was indicted and pleaded guilty to Racketeering and Drug Trafficking, in the Southern District of California. See United States v. Ramos, Case No. 18cr1404-WQH.

16. In September 2016, officers seized $592,450 and $435,190, respectively, from two USPV boxes of Mikhail Malykhin, an individual who was the leader of an identity theft/computer intrusion fraud ring. He and others were involved in a complex scheme involving altering hacked debit cards from a health insurance provider and altering the codes to cash out the debit cards. Malykhin was indicted and pleaded guilty to committing access device fraud, and the over $1,000,000 in funds seized from Malykhin's boxes were forfeited as proceeds of the fraud and were used to pay restitution to victims of Malykhin's fraud. See United States v. Malykhin, Central District of California Case No. 16cr0688-DMG.

17. In November 2015, officers seized $1,543,400 from the USPV box of Gerald Lebowitz, which he stated had been brought into the United States illegally to avoid taxes. However, further investigation revealed that Lebowitz was part of a conspiracy to distribute methaqualone, a controlled substance, and officers seized

6

over 45 kilograms of methaqualone powder and 12 canisters of the chemical o-Taluidine, both chemical precursors, during the course of the investigation. The funds were forfeited as criminal proceeds. See United States of America v. Lebowitz, Central District of California Case No. 17cr-0053-CAS.

18. On October 28, 2015, officers seized $500,000, 22 gold bars and 15 gold coins from the USPV box of Cyrus Irani, who was the master bookmaker and head of an illegal gambling organization that operated both internet and traditional bookmaking operations, and engaged in money laundering. He pleaded guilty to Enterprise Corruption, and 14 others in his organization were convicted of various gambling, money laundering and enterprise corruption charges. The assets found in Irani's box were forfeited as criminal proceeds.

The Seizure Of $600,980.00 In U.S. Currency From Mitchell Magee's USPV Box And The Defendants From Mitchell Magee's Residence And Rented Storage Unit.

19. As alleged in the related case, United States v. $600,980.00 in U.S. Currency, Case No. 2:21-cv-06965-RGK-MAR, in which Mitchell Magee is a claimant, officers found $600,980.00 in U.S. currency inside Mitchell Magee's box no. 504 at USPV, which funds the government alleges in the complaint in that case represent the proceeds of criminal activity (including, but not limited to narcotic law, identity theft, access device fraud and wire fraud violations) and were involved in money laundering activity and are therefore subject to forfeiture.

20. In addition, Mitchell Magee has a significant criminal history, which includes convictions on state as well as federal crimes and dates back for over 30 years. In 1989, he was convicted

for possessing or purchasing cocaine base for sale; in 1990, he was convicted for a misdemeanor of exhibiting a firearm; in 1993, he was again convicted for possessing or purchasing cocaine base for sale, and was sentenced to three years in prison; and in 1995 and 1996 he was arrested for grand theft of vehicles. In addition, he has a felony conviction in 1997 for making a false financial statement and was sentenced to 16 months in prison. Also, in 2006, was convicted in the Western District of Kentucky on federal charges of aggravated identity theft (18 U.S.C. § 1028A) and bank fraud (18 U.S.C. § 1344) and was sentenced to 42 months imprisonment, 5 years of supervised release and ordered to pay over $56,000 in restitution.

21. And despite having over $600,000 in his box, as well as the defendants in the instant action, Mitchell Magee failed to even pay his $56,000 in restitution, choosing instead to hide his money from the victims he defrauded. As of August 30, 2021, Mitchell Magee had still failed to pay over $35,000 that was due on the $56,000 in restitution, and had not even made any payment towards that restitution since April 2018, or for over three years. Instead, he chose to hide the $600,000 in his USPV box and the defendants, in his attempt to shield his assets and avoid having them given to persons he has defrauded.

22. In addition, Mitchell Magee does not have anywhere near sufficient legal sources of income to justify his acquisition and possession of the $600,980.00 seized from his USPV box (for which a state-certified, trained narcotic detection canine alerted) and the defendants. According to the EDD, Mitchell Magee is not employed. In addition, <u>and over and above the $600,000.00 seized from his USPV box and the $217,285.00 in currency named as a defendant in this</u>

action, Mitchell Magee is spending money on other valuable assets for which he has no legal source, including purchasing in November 2020 a 2017 BMW 740 for approximately $47,150, about $23,200 of which was in $100 dollar bills.

23. Mitchell Magee continues to engage in illegal conduct, and officers have found yet more funds derived from his illegal activity. Officers learned that Mitchell Magee rented a storage unit with the name of someone else without that person's permission. In order to rent the storage unit, Mitchell Magee presented to the storage facility a Florida driver's license in the name of the identity theft victim but bearing Mitchell Magee's photograph. When officers executed a search warrant on July 15, 2021 on Mitchell Magee's residence, they spoke with Mitchell Magee and showed him the counterfeit Florida driver's license used to rent the storage unit. In response, Mitchell Magee stated he did not know where he had obtained the counterfeit license. Officers executed a federal search warrant on the storage unit on July 15, 2021 and found $190,285.00 (i.e., part of the defendant $217,285.00 in U.S. Currency), and told Mitchell Magee, who seemed to be concerned only with obtaining a receipt for the funds.

24. In addition, Mitchell Magee told officers he had been in prison for bank fraud. Mitchell Magee described himself as "a white collar guy" while claiming he had nothing to do with drugs. During the search of Mitchell Magee's Perris, California residence, officers found yet more funds - - an additional $27,000.00 (i.e., the remainder of the defendant $217,285.00 in U.S. Currency). Furthermore, officers found during the July 15, 2021 search at Mitchell Magee's Perris, California residence the three defendant

9

watches which, as mentioned above, have a combined value of almost $30,000.00.

## FIRST CLAIM FOR RELIEF

25. Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

26. Based on the above, plaintiff alleges that the defendants represent or are traceable to proceeds of illegal narcotic trafficking, were intended to be used in one or more exchanges for a controlled substance or listed chemical, or were used or intended to be used to facilitate a controlled substance or listed chemical violation, in violation of 21 U.S.C. § 841 et seq. The defendants are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

27. Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

28. Based on the above, plaintiff alleges that the defendants constitute or are derived from proceeds traceable to a controlled substance violation, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D). The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF

29. Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

30. Based on the above, plaintiff alleges that the defendants constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access device fraud) and/or 1341 (wire fraud), each of which is a specified unlawful activity as

defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D). The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## FOURTH CLAIM FOR RELIEF

31. Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

32. Based on the above, plaintiff alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a controlled substance or listed chemical violation, and violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access device fraud) and/or 1341 (wire fraud). The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## FIFTH CLAIM FOR RELIEF

33. Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

34. Based on the above, plaintiff alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a controlled substance or listed chemical violation, and violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access device fraud) and/or 1341 (wire fraud). The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a)  that due process issue to enforce the forfeiture of the defendants;

(b)  that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)  that this Court decree forfeiture of the defendants to the United States of America for disposition according to law; and

(d)  for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: January 3, 2022
TRACY L. WILKISON
United States Attorney
SCOTT M. GARRANGER
Assistant United states Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Chief, Asset Forfeiture Section

          /s/
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys
Asset Forfeiture/General Crimes Sections

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## VERIFICATION

I, Lyndon Versoza, hereby declare that:

1. I am a United States Postal Inspector employed by the United States Postal Inspection Service.

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 29, 2021 at Los Angeles, California.

_____
LYNDON VERSOZA