LAW OFFICE OF ERIC HONIG
Eric Honig - CA Bar No. 140765
P.O. Box 10327
Marina del Rey, CA 90295
erichonig@aol.com
Telephone: (310) 699-8051
Fax: (310) 943-2220

DAVID B. SMITH
dbs@davidbsmithpllc.com
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, VA 22314
703-548-8911
Fax 703-548-8935
*Pro Hac Vice*

Attorneys for Claimant
MITCHELL MAGEE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>$217,285.00 IN U.S. CURRENCY, ETC.<br><br>  Defendants.<br><br>MITCHELL MAGEE,<br><br>  Claimant. | Case No. 2:22-CV-00015-RKG-MAR<br><br>OPPOSITION TO MOTION FOR AN ORDER TO STAY THIS CIVIL FORFEITURE PROCEEDING<br><br>DATE: September 26, 2022<br>TIME: 9:00 a.m.<br>CTRM: 850, Hon. R. Gary Klausner |

Claimant Mitchell Magee ("Claimant"), by and through his counsel of record, hereby submits his Opposition to Plaintiff United States of America's Motion for an Order To Stay This Civil Forfeiture Proceeding (Doc. 26), as follows:

# I.

# INTRODUCTION

In March 2021 the government unlawfully seized claimant's property at U.S. Private Vaults ("USPV"). The warrant authorized only an inventory search and required the government to notify claimant so he could have his property returned, but the government instead used the authorized inventory search as a pretext to search, seize and forfeit all of the valuable property in the USPV boxes belonging to hundreds of presumptively innocent people. This unprecedented illegal behavior included the seizure of all the valuable property in Claimant's box and the filing of *U.S v. $600,980 in U.S. Currency*, 2:21-CV-6965-RGK-MAR.

The government used the fruits of that blatantly unlawful search and seizure to search for and seize additional property from Mr. Magee's home and storage unit four months later, on July 15, 2021, and to bring this second civil forfeiture case. The government now compounds the unfairness of this new case by moving to *indefinitely* stay it as well while supposedly diligently pursuing a "related criminal investigation" under the auspices of 18 U.S.C. §981(g)(4).

But Claimant contends the alleged criminal investigation is not sufficiently "related" to this civil forfeiture case to be covered by §981(g)(4), and submits that the Court should require the government to at least generally explain *what* its criminal investigation concerns. Section 981(g)(5)'s authority for the government to file information *ex parte* and *in camera* is not without limits. This Court can prevent the government from misusing that provision to perpetrate an injustice.

The court should deny the government's motion for a stay for several other reasons as well:

1. The government claims that allowing civil discovery in the forfeiture case to proceed would adversely affect its criminal investigation, however Claimant will not ask for *any* discovery. He simply wants to file and litigate a motion to suppress the evidence obtained from the illegal search of his USPV box.

Claimant contends Magee was not under investigation until the government unlawfully seized his property at USPV. The unlawful search and seizure of his safety deposit box therefore taints the whole criminal investigation. Accordingly, Claimant will *withdraw all* of the discovery requests previously sent to the government, which are attached to the government's motion to stay as Exh. A.

2.   The government set in motion a series of unlawful searches and seizures at USPV, which continued at Claimant's home and storage facility. The government has seized a tremendous amount of Claimant's assets, but now seeks to indefinitely stop him from seeking their return. This Court should view the government's position skeptically in these circumstances – particularly in view of Claimant's statement that he will not seek any discovery to support his motion to suppress. *E.g.*, *U.S. v. Contents of Accounts*, 2010 U.S. Dist. LEXIS 66201 (W.D. Ky. July 2, 2010)(chiding government for trying to take advantage of civil forfeiture procedures to tie up nearly all of claimant's property, but then "trying to halt the civil suit when it becomes inconvenient").

What little remains of the government's argument – after its threat of civil discovery argument is disposed of – is not sufficient to satisfy its burden under §981(g), as explained below. The government's conclusory invocation of the Court's "inherent" authority to control its docket and calendar (Motion at 12:10-21) does not change the result. Congress has enacted a statute that specifically deals with when a stay may be granted in a civil forfeiture case, so it controls. But even assuming the Court retains the power to decide a stay motion outside the bounds of §981(g), the balancing test used in "inherent power" cases weighs heavily against the government, as Claimant demonstrates below.

3.   Claimant does not need any discovery for his motion to suppress because the class plaintiffs in *Snitko v. United States*, 2:21-cv-04405-RGK-MAR already obtained voluminous civil discovery from the government, including deposition testimony, relating to the same suppression issue, and Claimant will

rely substantially on that discovery and the outstanding legal analysis in the plaintiffs' opening and reply trial briefs in that litigation (*see, Snitko*, Docs. 135 and 130).

The government in its motion to stay did not inform this Court that it had *already* participated in very extensive civil discovery with the *Snitko* plaintiffs regarding the search and seizure issues Claimant seeks to address in a motion to suppress (the plaintiffs' unredacted Opening Brief was filed on August 18, 2022, *see Snitko*, Doc. 135). For the purposes of opposing the government's motion to stay, Claimant incorporates and adopts all arguments relating to the searches and seizures from USPV boxes and the evidence cited in those briefs. *Snitko*, Docs. 135 and 130.

Of course, the *remedy* Magee seeks – suppression of the evidence obtained from the illegal search of his box – is different from the somewhat unusual remedies sought by the *Snitko* plaintiffs, whose property has already been returned to them. Accordingly, Claimant has no need to adopt the *Snitko* briefs' discussion of the remedy or relief issues in that case.

4. Claimant's position also is different from the *Snitko* plaintiffs with respect to the procedural posture of his case. Unlike the *Snitko* plaintiffs, Claimant is not urging the Court to adopt the legal standard for summary judgment motions (*see Snitko*, Doc. 135 at 17:8-15). And this Opposition to the government's stay motion is not a motion to suppress, but, rather, an argument for allowing Claimant to *litigate* a motion to suppress as a necessary carve-out from the indefinite stay sought by the government. Claimant is not asking the Court to opine now on the merits of a motion to suppress that has not yet been filed. But he relies on the *Snitko* briefs to show that a motion to suppress clearly would have a substantial basis in fact and law.

II.

ARGUMENT

**A.     The government's showing is insufficient to require an indefinite stay under § 981(g), which would prevent Claimant from litigating a motion to suppress without the threat of discovery requests to the government.**

The government cites several cases in which it obtained a stay under §981(g) based on the alleged adverse effect of civil discovery sought by the claimant on a criminal investigation. Those cases are rendered irrelevant by Claimant's agreement herein that he will not seek *any* civil discovery at this time. *E.g., United States v. U.S. Currency in the Amount of $423,059.02*, 2012 U.S. Dist. LEXIS74579 (W.D. Mo. May 30, 2012)(where claimants asserted they would not seek any discovery, it would seem to address the government's concerns).

The government also argues that **it** "would need written and deposition discovery **from claimant** and other persons involved in the illegal conduct that is part of the criminal investigation, as well as from third parties with relevant information pertaining to the investigation, to prove the government's case in chief and refute affirmative defenses claimant has raised." Motion at 9:12-16. It adds that "[e]ven if claimant or the third parties responded to the government discovery… **the government would be creating discovery** which would have to be turned over in any subsequently-filed criminal case, which would thereby expose the prosecution strategy for proving that particular individuals or entities engaged in illegal conduct. Therefore, the government's [own] discovery would adversely affect the government's ability to conduct a related criminal investigation." *Id*. at 9:16-10:4 (emphasis added).

This convoluted, strange argument is difficult to understand, but it nevertheless is rubbish. Claimant will try to unpack some of it.

First, it is obvious the government does not need to conduct any discovery of its own with respect to the Fourth Amendment issue Claimant wishes to litigate.

4

The government is referring to discovery **regarding the merits of its civil forfeiture claim and Claimant's possible affirmative defenses**, *not* the Fourth Amendment suppression issue – the **only** issue Claimant now is asking for an opportunity to litigate during the government's criminal investigation.

Second, even regarding the merits of the civil forfeiture case, it is not apparent how the government's **own** discovery on the merits would expose its prosecution strategy for proving particular individuals or entities engaged in illegal conduct, or how this discovery would adversely affect its ability to conduct its related criminal investigation. This is just unfounded, conclusory speculation.

Third, the two unpublished, non-precedential district court decisions the government cites (Motion at 10-11) to support its argument do not lend any support to it, even assuming they were correctly decided. In both cases the claimant sought permission to move for *summary judgment* without seeking any discovery while there was a pending criminal investigation of him. The claimants were not seeking to litigate a motion to suppress, in which they had the burden of proof, and the government here does not need to conduct any discovery, which they would need to oppose summary judgment (*see*, F.R.Civ.P. 56(d)).

First, in *United States v. $247,052.54*, 2007 WL 2009799 (N.D. Cal. July 6, 2007), the court rejected the claimant's argument because the government needed to take discovery to effectively oppose his motion for summary judgment. The claimant was not seeking to file a motion to suppress, unlike Claimant here, for which the government does **no**t need to take discovery. Moreover, the government already had plenty of discovery opportunities in the *Snitko* litigation – assuming it wanted to take discovery on the Fourth Amendment issues common to both *Snitko* and Claimant's case. Further, in *$247,052.54* the government asserted it would need to depose two specific witnesses (Shield and Trabue) to oppose summary judgment for the claimant, but both of those witnesses also had knowledge relevant to the criminal case. The court thus said "deposing them now would

allow [claimant] Dobbs the opportunity to cross examine them in advance of trial, potentially exposing the Government's strategy for trial, or require them to divulge information related to the criminal case . . . . the government would also require testimonial declarations from law enforcement officers, whose testimony will play a central role in the criminal trial, creating additional risks." *Id*. at 10-11.

Nothing like that is alleged by the government here, nor could it be. In the other unpublished district court decision, from Texas, cited in the government's motion on p. 11, n. 4, the government there also claimed it had to engage in discovery to oppose the claimant's summary judgment motion and the claimant acknowledged that it would be unduly prejudiced if claimant was required to produce discovery while [the] criminal case was pending against claimant. Again, these facts are easily distinguishable from the case at bar.

Apparently under the government's theory, "every civil forfeiture case with a related criminal investigation is entitled to a stay." *See U.S. v. All Funds ($357,311.68) Contained in N. Tr. Bank of Fla. Account*, 2004 U.S. Dist. LEXIS 15590, at *2 (N.D. Tex. 2004). That cannot be right. The Civil Asset Forfeiture Reform Act ("CAFRA") was a *reform* statute. It was not a giant giveaway to the government.

The government asserts that the CAFRA "lightened the burden on the party seeking a stay by eliminating the requirement that the movant establish good cause for the stay." Motion at 7, n. 1. But CAFRA's stay provision at the same time made it more difficult for the government to obtain a stay, by requiring a showing that civil discovery "*will* adversely affect the ability of the government to conduct a related criminal investigation or the prosecution of a related criminal case," whereas the prior case law generally did not require such a definite showing of adverse effect. *See, e.g.*, *U.S. v. Real Prop. Known As 223 Spring Water Lane, Knoxville*, No. 6:18-cv-REW, Doc. 38 (E.D. Ky. Sept. 3, 2019)(soundly rejecting the government's argument that §981(g) does not require it to make a

"particularized showing" that civil discovery "will" adversely affect the ability of the government to conduct a related criminal investigation or prosecution, relying on the plain language of §981(g)(1) and (g)(5) allowing the government to "submit evidence ex parte" – noting that "[s]uch a mechanism would seem unnecessary if the Government could always satisfy its §981(g)1 burden with a showing devoid of particularity"; the court also directed the government to address the viability of a §981(g)(3) protective order in lieu of a stay and whether the claimants' request for a probable cause hearing should be granted "as a precursor or exception to any proposed stay," citing § 981(g)(6)); *see also U.S. v. $4,480,466.16 in Funds Seized from Bank of Am. Account*, 2018 U.S. Dist. LEXIS 70180, at *4-10 (N.D. Tex. Apr. 26, 2018)(stay denied because government's arguments "'do nothing more than speculate about how civil discovery will adversely affect its criminal investigation'"); *U.S. v. $3,592.00 U.S. Currency*, 2016 U.S. Dist. LEXIS 133435 (W.D.N.Y. Sept. 28, 2016)(to grant a stay "without any specific showing [of adverse effect] and when no lesser alternatives (such as a protective order, or preliminarily limiting discovery to certain areas or types) have even been attempted … would be inconsistent with the standard articulated in the statute"); *U.S. v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 214-15 (D.D.C. 2014)(government did nothing more than speculate about how civil discovery would adversely affect its criminal investigation; if government fails to show that civil discovery *will in fact* adversely affect its criminal investigation, a stay should be denied); *U.S. v. 216 Kenmore Ave.*, 657 F. Supp. 2d 1060, 1063-65 (D. Minn. 2009)(government failed to show specifically how civil discovery *would* adversely affect its criminal case; its argument that a stay would avoid duplication of effort was irrelevant and also ironic as it chose to seek forfeiture in both the civil and criminal cases); *U.S. v. GAF Financial Services, Inc.*, 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004) (government must make "actual showing" that civil discovery *will* adversely affect criminal investigation or prosecution); *U.S. v. All Funds on Deposit in Suntrust*

7

1  *Account Number XXXXXX8359 ,* 456 F. Supp. 2d 64, 65 (D.D.C. 2006)(same).

2  The final case upon which Claimant relies is one this Court decided: *United States v. Larkin (In re Any & All Funds Held in Republic Bank of Ariz. Account XXXX1889),* 774 Fed. Appx. 400 (9th Cir. 2019)(unpublished). Appellants, the corporate parent owners of Backpage.com – filed a motion to vacate or modify seizure warrants, alleging the seizures violated their constitutional rights. At the request of the government, this Court stayed the civil forfeiture proceedings pursuant to §981(g). Appellants immediately appealed the stay order, arguing this Court erred in imposing the stay by failing to first address their constitutional challenges to the seizures. The Ninth Circuit held it had jurisdiction to hear the interlocutory appeal because the stay order had the effect of keeping the seizures of the 89 bank accounts in place.

The government alleged concerns regarding the impact of the disclosure of privileged materials on its strategy in the related Arizona criminal case, but the Court apparently did not make findings about the allegedly privileged materials and did not review them *in camera*. The panel held "Thus, we find no basis outside of conclusory allegations in the record for such a stay." In briefing and at oral argument, the government conceded appellants were entitled to some review of their claims prior to the imposition of the stay, just as Claimant argues here. Accordingly, the court of appeals vacated the stay order and remanded the case to for this Court to conduct further proceedings.

Here, too, the government is merely making a conclusory allegation of potential adverse effect on its criminal investigation if the civil forfeiture case is allowed to proceed. Like the appellants in *Larkin*, Claimant simply is asking this Court for an opportunity to litigate a substantial motion to suppress – without any discovery – prior to the imposition of any stay order, or as an exception to a stay order. The Court should allow him to do so. It will not interfere in any way with the government's criminal investigation.

8

### B. The criminal investigation is not sufficiently "related" to this civil forfeiture case to qualify for a stay under §981(g)(4).

The Court should scrutinize the government's claim that the civil forfeiture case is "clearly related" to the criminal investigation. See Motion at 11:17. Because the government filed its allegations about the relationship between the criminal investigation and the civil forfeiture case entirely *ex parte* and *in camera*, counsel for Claimant are unable to effectively counter the government's argument. But counsel have reason to doubt the accuracy of the government's assertion.

First, the government incorrectly asserts that "§981(g)(4) indicates that the forfeiture case and criminal investigation *should have some similarities* but need not be identical in all respects." *Id.* at 12 (emphasis added). The government, however, cites no authority for its "some similarities" standard and Claimant is not aware of any such authority. That is plainly not what §981(g)(4) says. Instead, the statute requires that "the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors."

Second, Claimant contends the criminal investigation is an unsupported effort to tie him and his brother to an indicted, ongoing, broad, multi-drug conspiracy case in the Western District of Pennsylvania with dozens of defendants. The Magee brothers deny they have any relationship whatsoever to that drug conspiracy, and counsel are not aware of any evidence connecting the brothers to that drug conspiracy. If that is what the government is investigating there is no "degree of similarity" between the parties, witnesses, facts, and circumstances involved in the two proceedings.

The Court need not reach this relatedness issue if it concludes that the government has not carried its burden of showing that allowing Claimant to litigate a motion to suppress based on a prior search of USPV "will" adversely affect its alleged criminal investigation.

9

**C. The government's conclusory alternative argument, that the Court should issue a stay to prevent Claimant from litigating his motion to suppress pursuant to its "inherent authority to control its docket and calendar," also fails.**

Perhaps the government argues that a stay is also appropriate pursuant to the Court's inherent power to control its dockets and calendar because it doubts its ability to prevail under §981(g). But where Congress writes a statute to regulate the conditions for obtaining a specific remedy (a stay of the proceedings) in a specific type of case (civil forfeiture), a court is not at liberty to grant that remedy based instead on its "inherent power" to do so. The government must satisfy the terms and conditions of the specific statute or forgo the remedy. The government cites no authority for the contrary proposition.

In any event, cases decided under the court's "inherent power" carefully balance the respective interests of the parties. *See Landis v. North American Co.*, 299 U.S. 248, 255 (1936)(the party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012); *U.S. v. Mellon Bank, N.A.*, 545 F.2d 8869, 873 (3d Cir. 1976). Any reasonable balancing of the interests of the parties here must result in the denial of the government's stay motion or **at least** allow Claimant to litigate his motion to suppress prior to the effective date of the stay or as an exception to the stay.

## III.

## CONCLUSION

The Court should deny the request for a stay or, alternatively, allow Claimant to first litigate a motion to suppress evidence based on the prior search at USPV.

| | | |
|---|---|---|
| 1 | Dated: September 2, 2022 | Respectfully submitted, |
| 2 | | DAVID B. SMITH |
| 3 | | (*pro hac vice*) |
| 4 | | LAW OFFICE OF ERIC HONIG |
| 5 | | */s/ Eric Honig* |
| 6 | | Eric Honig<br>Attorneys for Claimant<br>MITCHELL MAGEE |