STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Asset Forfeiture Section
     Federal Courthouse, 14th Floor
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2569/1785
     Facsimile: (213) 894-0142
     E-mail: Victor.Rodgers@usdoj.gov
           Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>$217,285.00 IN U.S. CURRENCY, ET AL.,<br><br>        Defendants.<br><br>MITCHELL MAGEE,<br><br>        Claimant. | Case No. 2:22-cv-00015-RGK-MAR<br><br>**PLAINTIFF UNITED STATES OF AMERICA'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER TO STAY THIS CIVIL FORFEITURE PROCEEDING**<br><br>Date:        September 26, 2022<br>Time:       9:00 a.m.<br>Courtroom:  850, the Honorable<br>                 R. Gary Klausner |

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff United States of America ("the government") respectfully submits this reply memorandum of points and authorities in support of its motion to stay this action pursuant to the mandatory stay provisions of 18 U.S.C. § 981(g) and the Court's inherent power.   On March 8, 2022, this Court granted the government's virtually identical motion to stay in a related civil forfeiture case against different assets but involving the same claimant and the same ongoing criminal investigation.  See United States v. $600,980.00 in U.S. Currency; Claimant Mitchell Magee, Case No. 2:21-cv-06965-RGK-MAR, 2022 WL 2284934 (C.D. Cal. Mar. 8, 2022), Dkt. No. 38.  In granting the motion to stay, this Court noted:

> Claimant has indicated that he intends to bring a motion to suppress based on the FBI's alleged misconduct in seizing Claimant's USPV box. . . . Defending against such a motion would require the Government to depose witnesses and offer declarations from the seizing FBI agents, which could further prejudice the related investigation.  See United States v. $247,052.54, 2007 WL 2009799, at *2 (N.D. Cal. July 6, 2007) ("Deposing [witnesses] now would allow [Claimant] the opportunity to cross-examine them in advance of trial ... requiring them to divulge information related to the criminal case ... [and] testimonial declarations of law enforcement officers, whose testimony will play a central role in the criminal trial, creat[e] additional risks.")

Id. at *2.

Here, the same claimant (i.e., Mitchell Magee ["Claimant"]) who filed a claim in the related case and is the subject of the federal criminal investigation, makes an identical argument in opposing the present motion to stay: "He simply wants to file and litigate a motion to suppress the evidence obtained from the illegal search of his USPV box."  Opp'n Br. at 1:27-28.   But the Court's previous ruling applies equally here, and

1

the Court should stay this case pending the ongoing criminal investigation into Claimant.

As detailed in the non-public declaration filed in camera, proceeding with this civil forfeiture case will adversely affect the ability of the government to conduct the related federal criminal investigation.  Defending against a motion to suppress would require the government to create declarations from agents involved in the USPV seizure of Claimant's USPV box and also regarding the ongoing criminal investigation.  This is true in connection with Claimant's Fourth Amendment affirmative defense because the government would be required to create declarations with respect to agents' good faith reliance on a facially valid warrant in connection with the inventorying of Claimant's USPV box, and with regard to other possible defenses to a motion to suppress.  And by withdrawing discovery requests and relying on discovery in a separate case, Claimant in essence requests a protective order to use the discovery obtained in that case to file a suppression motion here while avoiding any discovery against him altogether.  As explained infra, 18 U.S.C. § 981(g)(3) forbids such a result.

## ARGUMENT

### A.   Claimant Has Not Adequately Refuted That A Stay Is Appropriate Because Civil Discovery Will Adversely Affect The Government's Ability To Conduct A Related Federal Criminal Investigation.

As the government's moving papers advised, under 18 U.S.C. § 981(g)(1), which is the mandatory stay provision adopted as part of the Civil Asset Forfeiture Reform Act of 2000 (the "CAFRA"), a stay is mandatory "if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."  In addition, the government previously noted that caselaw holds that the statute lightened the burden on the government in seeking the stay by eliminating the requirements that the government establish good cause for a stay and file a criminal indictment.  Moving papers at 5:23-28 and 6:27-28. Accord, $600,980.00 in U.S. Currency, 2022 WL 2284934 at *2.

1    Claimant does not dispute that he served a document request that sought

2    production of all details of the ongoing confidential federal investigation against him.

3    Moving papers at 3:19-4:7.  Yet, in order to avoid CAFRA's mandatory stay provision,

4    Claimant now announces he will withdraw his document request in an effort to show a

5    stay is unwarranted, claiming that he can file a suppression motion without conducting

6    additional discovery because he will rely "substantially" on the deposition testimony

7    obtained in discovery in the class action case before this Court entitled <u>Snitko v. United

8    States</u>, 2:21-cv-4405-RGK-MAR.  Opp'n Br. at 2:25-3:3.  Accordingly, Claimant—an

9    individual with a substantial criminal history and no legitimate source of income to

10   explain his possession of the nearly $900,000 seized from him and who has failed to pay

11   his outstanding restitution debt—undoubtedly will assert the Fifth Amendment privilege

12   to avoid any discovery by the government in light of the current pending criminal

13   investigation against him.  <u>See</u> <u>$600,980.00 in U.S. Currency</u>, 2022 WL 2284934 at *3

14   ("[d]ue to the ongoing criminal investigations, Claimant seems likely to assert his Fifth

15   Amendment privilege in the face of interrogatories or a deposition").  Therefore,

16   Claimant in essence requests a protective order to use the discovery obtained in another

17   lawsuit to file a suppression motion here while avoiding any discovery against him.

18   However, 18 U.S.C. § 981(g)(3) forbids imposing " 'a protective order as an alternative

19   to a stay if the effect of such a protective order would be to allow one party to pursue

20   discovery while the other party is substantially unable to do so.' "  <u>Id.</u>  (quoting 18

21   U.S.C. § 981(g)(3)).  <u>Accord</u>, Moving Papers n.3 at 7:23-28 and 8:28.

22   Moreover, Claimant's arguments fail because opposing any suppression motion

23   would require the government to create discovery in this civil forfeiture case, meaning

24   that civil discovery will adversely affect the ability of the government to conduct a

25   related criminal investigation or the prosecution of a related criminal case within the

26   meaning 18 U.S.C. § 981(g)(1)'s mandatory stay provision.  As to the standard under 18

27   U.S.C. § 981(g)(1) for a stay, the statute "requires no particularized showing of prejudice

28   or harm; all the Court needs to determine is whether civil discovery will likely interfere

                                             3

1  with the criminal investigation." <u>$600,980.00 in U.S. Currency</u>, 2022 WL 2284934 at
2  *2 (citation omitted); <u>see also</u> cases cited in Moving Papers at 6:3-8.

3       Claimant makes no effort to discuss, distinguish or refute the cases the
4  government cited (or those cases reflected in the Court's order granting the stay motion
5  in the related case involving Claimant) showing that a stay is warranted.  As the
6  government previously noted, where, as here, proceeding with civil discovery would
7  subject the government to broader discovery than it would have to endure in the criminal
8  proceeding (<u>e.g.</u>, requiring the government to respond to written discovery or testify in
9  depositions in criminal investigations or cases) or, most significantly here, permit
10  claimants and other third parties to obtain discovery <u>earlier than they otherwise would be</u>
11  <u>entitled to receive it</u> in the criminal proceeding, a stay under the mandatory stay
12  provisions of 18 U.S.C. § 981(g)(1) is warranted.  Moving Papers 5:4-22; <u>$600,980.00 in</u>
13  <u>U.S. Currency</u>, 2022 WL 2284934 at *2.

14       That is precisely the situation here.  Claimant advises that his suppression motion
15  would contend a Fourth Amendment violation occurred because "the warrant [for the
16  March 2021 seizure of Claimant's USPV box] authorized only an inventory search and
17  required the government to notify claimant so he could have his property returned, but
18  the government instead used the authorized inventory search as a pretext" to seize
19  $600,980.00 situated in Claimant's USPV box.  Opp'n Br. at 1:1-6.  Claimant's motion
20  would then contend the government used the fruits of the USPV search to seize on July
21  15, 2021 the defendants in the current case from Claimant's residence (where $27,000.00
22  of the defendant currency and the three defendant watches valued at approximately
23  $30,000.00 were seized) and a storage unit rented with an identity theft victim's driver's
24  license (where the remaining $190,285.00 of the defendant currency was seized).  Opp'n
25  Br. at 1:1-14.  Claimant's contemplated suppression arguments show why 18 U.S.C.
26  § 981(g)(1)'s standard is met.

27       Discovery would be created as to the March 2021 seizure of $600,980.00 from
28  Claimant's USPV box.  As the government's moving papers and the Court's ruling in

4

1    the related case notes, and Claimant's opposition ignores, in order to assert the good

2    faith defense in response to Claimant's Fourth Amendment violation claim, Claimant's

3    suppression motion would require the government to create testimonial declarations

4    from officers who inventoried Claimant's USPV box, meaning Claimant would be

5    receiving these declarations (and the discovery information contained therein) earlier

6    than Claimant would otherwise be entitled to them because claimants/criminal

7    defendants are not entitled to receive discovery information while a federal criminal

8    investigation is pending and before a criminal indictment is filed.

9            Again, as previously noted, Claimant's Fourth Amendment affirmative defense in

10   his Answer raises factual issues that will require testimonial declarations from officers

11   who inventoried Claimant's USPV box averring that, in inventorying the box, the

12   officers objectively relied on a facially valid warrant that provided agents could

13   inventory the boxes in accordance with agency inventory policy.  Moving papers 7:2-11

14   and 7:20-23 at n.2  (citing United States v. Real Property Located at 15324 County

15   Highway E., 332 F.3d 1070 (7th Cir. 2003) (affirming denial of claimant's suppression

16   motion where the court applied the good faith exception to uphold the search because

17   officers acted in reasonable reliance on a facially valid search warrant).  Accord, United

18   States v. Leon, 468 U.S. 897 (1984) (good faith exception exists to suppression where

19   the agents objectively reasonably relied on a facially valid warrant); $680,980.00 in U.S.

20   Currency, 2022 WL 2284934, *2 ("Defending against such a motion [to suppress] would

21   require the Government to depose witnesses and offer declarations from the seizing FBI

22   agents, which could further prejudice the related investigation") (citation omitted).

23           Discovery would also be created as to the July 2021 seizure of the defendants in

24   the instant action, which Claimant argues are fruit of the poisonous tree because

25   Claimant contends that the March 2021 seizure at USPV violated the Fourth

26   Amendment.  For example, evidence is independently admissible under the doctrine of

27   inevitable discovery, which "permits the government to rely on evidence that ultimately

28   would have been discovered absent a constitutional violation."  United States v. Ruckes,

5

586 F.3d 713, 718 (9th Cir. 2009).  The government is "required to prove, by a preponderance of the evidence, that there was a lawful alternative justification for discovering the evidence." Id. at 719.  In opposing  a motion to suppress, the government is entitled to make such an argument in the alternative, which would expose facts related to its ongoing criminal investigation and information from cooperating witnesses to establish alternative justifications for the July 15, 2021 seizures of the defendants in this action.

As noted above, Claimant completely ignores the government's case and argument concerning suppression motions.  Moreover, Claimant's attempt to distinguish the government's cases involving summary judgment motions are of no avail.  The government's moving papers first cited United States v. $247,052.54, 2007 WL 2009799 (N.D. Cal. Jul. 6, 2007) (stay must be granted because government's need to depose witnesses to oppose claimant's motion for summary judgment will expose those witnesses to cross examination, exposing government's strategy for trial; government also would need testimonial declarations from its agents "creating additional risks").  Claimant tries to distinguish this case by arguing that there, the claimant sought permission to move for summary judgment without seeking any discovery, not a motion to suppress.  Opp'n Br. at 5:10-17.  Claimant baldly asserts that here the government has no need for discovery in defending a motion to suppress.  Id. at 6.  Again, Claimant entirely ignores the facts here.  The government would be required to create discovery in connection with the Fourth Amendment affirmative defense.  And the defendant assets were not seized at USPV.  In defending against a motion to suppress, the government would need to create discovery in the form of declarations and divulge nonpublic facts related to the criminal investigation.

The same flaw applies to Claimant's attempt to distinguish United States v. $2,067,437.08 in U.S. Currency, 2008 WL 238514, *6 (E.D. Tex. Jan. 28, 2008) (stay ordered where claimant contented that it could proceed with summary judgment motion without discovery, government claimed it had to engage in ordinary civil discovery and

claimant acknowledged that it would be unduly prejudiced if claimant was required to produce discovery while the criminal case was pending).  It does not matter that the motion at issue in that case was a summary judgment motion as opposed to a motion to suppress—the relevant issue is that the government would be required in defending against the motion to create discovery, especially where the defendant assets are attenuated from the warrant that is the subject of the anticipated suppression motion.[1]

Claimant relies on In re Any & All Funds Held in Republic Bank of Arizona Accts., 774 F. App'x 400 (9th Cir. 2019) (unpublished) ("Larkin") to argue that a stay is not appropriate here.  Opp'n Br. at 8:2-28.  In that case, the Ninth Circuit in a three-paragraph order vacated a stay order where the government alleged concerns regarding the impact of the disclosure of privileged materials on its strategy in a criminal case, the record did not "reflect any type of in-camera review to verify that those allegations have any merit" and "both parties agree[d] that Appellants' motion should have been adjudicated prior to issuance of the stay." Id. at *401.  Here, the government is not merely relying on conclusory allegations or a presumption—instead, the government has submitted in camera a non-public declaration setting forth details of the confidential criminal investigation and the investigation's relationship to the civil forfeiture case. Moreover, unlike in Larkin, the government opposes the request to have Claimant's arguments heard before the imposition of a stay, because doing so would adversely affect the government's ability to conduct the related criminal investigation.

---

[1] See also United States v. 2009 Dodge Challenger, 2011 WL 6000790, *2 (D. Or. Nov. 30, 2011) (granting stay where claimants served no discovery because "[a]lthough claimants stress that they do not seek discovery, the government would be compelled to compile and reveal information and evidence collected in support of its criminal investigation in order to effectively oppose claimants' motions for summary judgment. The government ordinarily need not reveal all of its evidence during the course of criminal discovery") (citation omitted); United States v. 2015 Dodge Ram 3500 Truck, 2018 WL 6590834, *8 (D. Neb. Dec. 14, 2018) ("[t]he foreseeable discovery in this case will delve into the government's current and ongoing criminal investigation into the importation and sale of cigarettes. Under such circumstances, the court must stay the civil forfeiture proceeding because that discovery 'will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case' ") (emphasis added and quoting 18 U.S.C. § 981(g)(1)).

7

1    The other cases Claimant relies on are equally unavailing.  While the government

2    cites the applicable standard from this District—$600,980.00 in U.S. Currency, 2022

3    WL 2284934 at *2—Claimant offers several out-of-district citations with inapplicable

4    standards.  Opp'n Br. at 6–7.  Moreover, Claimant misdirects the Court by citing an old

5    Northern District of Texas case where the court, months after the cited decision, granted

6    the government's motion to stay where the government submitted a sealed declaration.

7    Compare Opp'n Br. at 7:9-13 with United States v. $4,480,466.16 in Funds Seized From

8    Bank of Am. Acct. Ending in 2653, 2019 WL 459645, at *4 (N.D. Tex. Feb. 6, 2019).

9    Indeed, in that case, the government submitted a sealed affidavit from a special agent,

10   and the court held that it considered the affidavit and found that the government had

11   shown that the criminal investigation would be adversely affected.  (Id. (citing 2009

12   Dodge Challenger, 2011 WL 6000790, *2 (D. Or. Nov. 30, 2011)).  Here, the

13   government has submitted details of the ongoing criminal investigation in camera

14   pursuant to 18 U.S.C. § 981(g)(5), thus showing the government is not merely relying on

15   conclusory allegations.

16   Finally, citing no authority, Claimant argues that the government seeks an

17   indefinite stay in this case.  However, the government submitted a proposed order which

18   requires the government to file status reports every 90 days concerning the progress of

19   the investigation, in order to allow the Court to monitor the status of this matter.  Dkt.

20   No. 28-1.  Accordingly, the government does not seek a stay of indefinite duration but

21   instead a stay of definite duration with the government providing status reports every 90

22   days, so that the Court can monitor the status of this case and determine whether the

23   government need submit anything more to justify a continued stay.  This is the typical

24   manner in which courts handle 18 U.S.C. § 981(g) stays.  See, e.g., United States v.

25   Approximately $69,577 in U.S. Currency, 2009 WL 1404690 at *1 (N.D. Cal. May 19,

26   2009) (ordering the government "to file status reports every 90 days detailing the

27   continued need for a stay"); United States v. Real Property and Improvements, 2007 WL

28   911849 at *1 (N.D. Cal. Mar. 23, 2007) (requiring the government "to file status reports

8

1   every 60 days detailing the continued need for a stay"). <u>See also</u> <u>United States v.</u>

2   <u>$1,111,120.00 in U.S. Currency</u>, 2014 WL 619436, *1-2 (S.D. Ohio Feb. 18, 2014)

3   (noting that government was required to file quarterly status reports regarding the

4   criminal investigation during the three years that the stay was in effect).

5       **B.    Claimant Offers No Evidence To Show That The Criminal Investigation**

6           **Is Not Related To The Instant Civil Forfeiture Case Under 18 U.S.C.**

7           **§ 981(g)(4)'s Broad Definition of Relatedness.**

8       The government's moving papers noted that 18 U.S.C. § 981(g)(4) provides that

9   in determining whether a criminal investigation is "related" to a civil forfeiture

10  proceeding, "the court shall consider the degree of similarity between the parties,

11  witnesses, facts, and circumstances involved in the two proceedings, without requiring

12  an identity with respect to any one or more factors."  Claimant offers nothing to show the

13  investigation and case are not related under the "similarities but not an exact identity"

14  broad standard.  Unlike the situation here, civil forfeiture claimants who are <u>not</u> the

15  subject of the criminal investigation argue the "related" standard has not been satisfied,

16  yet the argument nevertheless fails even in that circumstance.[2]  Here, by contrast, the

17  facts in the government's public complaint itself (which facts Claimant ignores) show

18  Claimant is the subject of a related federal criminal investigation: officers on July 15,

19  2021 executed federal search warrants at Claimant's residence and at a storage unit

20  Claimant rented using a counterfeit Florida driver's license bearing Claimant's

21  photograph but another name.  In addition to these public facts, the government has

22  submitted <u>in camera</u> a non-public declaration setting forth details of the confidential

23  criminal investigation and the investigation's relationship to the civil forfeiture case.  As

24  the government's moving papers noted, the <u>ex parte</u> submission is specifically

25

26       [2] <u>See United States v. 2004 Cadillac DeVille</u>, 2008 WL 619358, *1 (S.D. Ohio
27  Mar. 3, 2008) (stay granted because civil discovery could affect criminal investigation of
    claimants' sons and other third parties; that claimants themselves are not subjects of the
28  investigation is not reason to deny stay).

1    authorized by 18 U.S.C. § 981(g)(5), which provides that in requesting a stay pursuant to

2    18 U.S.C. § 981(g)(1), "the Government may, in appropriate cases, submit evidence ex

3    parte in order to avoid disclosing any matter that may adversely affect an ongoing

4    criminal investigation or pending criminal trial."

5        Claimant argues that the criminal investigation is "an unsupported effort" to tie

6    him and his brother to an indicted, ongoing drug conspiracy case in the Western District

7    of Pennsylvania.  Opp'n Br. at 9:17-24.  Not so.  The Court has before it the non-public

8    declaration detailing the connection between the ongoing criminal investigation and this

9    civil forfeiture case.  The government has offered sufficient evidence and argument to

10   show the requisite relationship between the investigation and the instant civil forfeiture

11   action to warrant a stay.

12       **C.    A Stay Is Also Appropriate Under The Court's Inherent Power To**

13           **Control Its Dockets.**

14       Claimant appears to argue the Court does not have inherent authority to authorize

15   a stay.  Not so.  The court is empowered to issue a stay pursuant to its inherent power to

16   control its docket and calendar.  See Mediterranean Enterprises v. Ssangyong Corp., 708

17   F.2d 1458, 1465 (9th Cir. 1983).  Any balancing of the respective interests of the parties

18   also clearly weighs in favor of the government.  There is an ongoing criminal

19   investigation that implicates multiple targets.  Claimant is eager to litigate a motion to

20   suppress related to a separate warrant at USPV in the face of this investigation.

21   Claimant ignores the fact that the defendants were seized at different locations pursuant

22   to different warrants.  A stay of this action is also proper under the Court's inherent

23   power.

                                **CONCLUSION**

25       For the foregoing reasons, the government respectfully requests that its motion be

26   granted.

27

28

                                      10

Dated: September 12, 2022

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

/s/
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

11